# Victory Cab Co. v. Churchill Downs, Inc. et al.

February 28, 1950.

Henry L. Brooks, Judge.

Woodward, Hobson & Fulton for appellant.

Bullitt, Dawson & Tarrant and L. D. Deters for appellees.

JUDGE CAMMACK—Affirming.

This suit for an injunction was based upon an alleged contract between the Victory Cab Company and

other independent taxicab companies and Churchill Downs, which permitted the independent cab companies to use certain property belonging to Churchill Downs for receiving and discharging passengers during the 1949 Spring and Fall Race Meetings. The appeal is from a judgment denying the injunction.

On April 4, 1949, a meeting was held at Churchill Downs, ostensibly for the purpose of discussing Derby Day traffic problems. Present at this meeting were state and city police officials, officials of Churchill Downs and certain taxicab operators, including Mr. Ignatow, vice-president of the Victory Cab Company, and Mr. Thomas Young, track superintendent of Churchill Downs. It is apparent that, during the course of the meeting, reference was made to the space used by the Taxicab Companies in 1948. Mr. Ignatow testified that, following the meeting, he had a further discussion with Mr. Young about the independent cab companies using the same space as was used by them in 1948. Mr. Young denied that such a conversation was had.

On April 5th, Mr. Ignatow sent the following letter to Mr. Young:

"Dear Mr. Young:

"Enclosed is a check for $275.00 for the rental of the cab lot for the Spring and Fall meets as per our discussion. This lot will be used by my company, Checker, Allied Bell, Etc. in the same manner as last year.

"Capt. Chaudoin informed me that he and Mr. Watkins would be out on Friday afternoon to see you about the final layout of these lots. I would appreciate it if after the lot lines are determined, you could have your carpenter erect the posts for us as he did last year under the same arrangements as last year.

"Thanking you for your many courtesies, I remain,

"Cordially yours,
"David Ignatow,
"Vice-President."

On April 12th, Mr. Young sent the following letter to Mr. Ignatow:

"Gentlemen:

"Enclosed find check which we are unable to accept

until final arrangements have been completed.

"We will advise you just as soon as the recheck of the lots are completed.

"Sincerely,
"Tom Young, Supt."

On April 29th, Mr. Young notified Mr. Ignatow that the 1948 arrangements would not be followed in 1949.

By agreement of the parties the cause was heard by Special Judge Henry L. Brooks. His statement denying the injunction follows:

"As I view the evidence in this case, I am convinced that the meeting that was held on April 4, was called primarily and solely for a discussion of traffic problems that arise each Derby Day. I feel that the minutes of the meeting that were submitted to all the interested parties is a substantially complete report of what occurred. I cannot believe that Churchill Downs through Mr. Young or any other representative during the course of the meeting made any commitment as to the allocation of parking space. The question arises as to what occurred in the conversation immediately following the adjournment of the meeting of April 4 between Mr. Young and Mr. Ignatow.

"Certainly Mr. Ignatow proceeded on the theory and on the assumption that first as a result of the meeting itself, and secondly, as a result of this later conversation with Mr. Young, to which he testified and which was denied by Mr. Young, that the allocation of parking facilities at the track was to be the same as it was in 1948. I think his action in making his telephone calls to the independent taxicab companies calling a meeting of them and what he reported to them in the meeting substantiates the fact that he thought such an agreement had been made.

"However, the burden rests upon the Plaintiff to establish the contract. From the testimony, I am convinced that he has failed to sustain the burden in establishing that a contract was entered into. This one fact alone is sufficient for my holding in this case that the injunction should be denied.

"An injunction is an extraordinary remedy and its issuance lies almost entirely within the discretion of the

Court, and should be exercised with great caution. I find that there was no contract made between Churchill Downs and the Independent Cab Company.

"As to the question of estoppel, in reading the letter of Churchill Downs dated April 12, in which the check was returned, I am convinced that that letter was all that Churchill Downs could be required to do in notifying Mr. Ignatow that it did not acknowledge*d* the existence of a contract. As to the question of Mr. Deter's motion for a directed verdict, I am inclined to believe that under the proof the motion might properly be sustained in a common law action. However, if we enter an order denying the temporary injunction which is the relief requested, I think that is all that is required. Therefore, the injunction is denied. Counsel to draw judgment.

"/s/ Henry L. Brooks, Judge"

The chief ground relied upon for reversal of the judgment follows: "Whether the Jockey Club *agreed* to the contract stated in Ignatow's letter of April 5th is immaterial. It acquiesced therein by retaining the check for eight days and not denying the contract for twenty-one days, while appellant was incurring expenses with appellee's knowledge, in reliance on the contract set out in the letter of April 5th, which appellee was in position to enforce."

We do not think that the doctrine of estoppel can be invoked in this case. As pointed out in 19 Am. Jur., Estoppel, section 42, that doctrine is founded upon principles of morality and fair dealing and is intended to subserve the ends of justice. The basis of the alleged contract was what transpired at the meeting on April 5th, and what was said between Mr. Young and Mr. Ignatow on that date, if anything. Clearly, the question whether there was a contract was one of fact. We think the record amply supports the finding of the chancellor that no such contract was entered into. Mr. Young's subsequent acts cannot be deemed to have worked a hardship on the independent cab companies. As said in Shaw v. Farmers' Bank & Trust Company, 235 Ky. 502, 31 S. W. 2d 893, 895: "* * * Silence, to work an estoppel, must amount to bad faith, and this cannot be inferred from facts of which the person sought to be estopped has no knowledge."

We do not think that the eight day delay in returning Mr. Ignatow's check would of itself work an estoppel in his favor.

Judgment affirmed.